UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ROBERT J. ANDRADE, )<br>)<br>Appellant )<br>)<br>v. )<br>)<br>NICOLE NASON HILL, )<br>)<br>Appellee )<br>) | Case No. 2:19-cv-00549-LEW |

## ORDER ON BANKRUPTCY APPEAL

The appellant, Robert J. Andrade, brings this appeal under 28 U.S.C. § 158(a)(1) from the Bankruptcy Court's final judgment in an adversary proceeding. After a full trial on the merits, the Bankruptcy Court found Mr. Andrade had failed to carry his burden of showing the appellee Nicole Hill's debts should be excepted from Chapter 7 discharge. As a result, the Bankruptcy Court entered judgment against Mr. Andrade on both Counts of his Amended Complaint. For the reasons that follow, I dismiss the appeal and affirm the findings of the Bankruptcy Court in full.

### BACKGROUND

I do not re-evaluate the Bankruptcy Court's evidentiary findings in detail. The First Circuit's analysis of any appeal will focus directly on the Bankruptcy Court's, not this Court's ruling on the facts. 28 U.S.C. § 158(d); *see also In re Simmons*, 810 F.3d 852, 856–57 (1st Cir. 2016) ("We accord no special deference to determinations made by the first-tier appellate tribunal but, rather, train the lens of our inquiry directly on the

bankruptcy court's decision."). And, because none of the Bankruptcy Court's factual findings was "clearly erroneous," I crib substantially from its retelling.

Mr. Andrade is a resident of Virginia. Ms. Hill is currently a Maine resident, but previously lived in Virginia. In 2011, Mr. Andrade and Ms. Hill entered into a general partnership for the purpose of sharing the profits and losses of a 7-11 franchise store located in Virginia. Mr. Andrade and Ms. Hill agreed to share all profits and losses of the store equally. They did not, however, execute a written partnership agreement. To obtain the franchise, Ms. Hill drew up a business plan in which she referred to Mr. Andrade as her "managing partner." In that plan, Ms. Hill stated that Mr. Andrade would help her with all aspects of the franchise, and that she and Mr. Andrade would be on hand daily to cover between one-third and two-thirds of all hours in the store.

At the outset of their enterprise, Mr. Andrade or Ms. Hill or both of them obtained four sources of financing: (1) a $65,000 loan from 7-11 (the "7-11 Loan"); (2) a $16,500 advance from Mr. Andrade (the "Andrade Loan"); (3) a $40,000 loan from Andrade, LLC (the "LLC Loan"); and (4) a $41,000 loan from Albert Pianalto, a relative of Mr. Andrade, (the "Pianalto Loan"). The parties did not memorialize these financing arrangements, execute written loan documents, or write promissory notes.

Ms. Hill, ultimately, obtained a 7-11 franchise in her name alone. In the franchise agreement, Ms. Hill agreed to be solely responsible for her own income taxes related to the store. She also agreed that she would not transfer her interest in the franchise without the prior written consent of the franchisor. In a form attached to the agreement, she designated Mr. Andrade as her successor to the franchise.

The store began operating in February, 2012. When Ms. Hill and Mr. Andrade formed the partnership and opened the store, they were in a personal relationship. At some point that relationship ended, and the business partnership encountered difficulties. Ms. Hill believed that the partnership terminated in the summer of 2012 when Mr. Andrade was unable or unwilling to put in the hours at the store to be a 50/50 partner. Mr. Andrade believed that he was not obligated to put in 50% of the hours to maintain his partnership interest given his contribution to the store's financing. In 2014, Ms. Hill asked Mr. Andrade not to return to the store.

At all times, Ms. Hill controlled the distribution of funds the store generated. The 7-11 Loan was paid monthly, according to its terms, from the store's receipts. When the store first opened, the parties shared personal finances, and Ms. Hill put most of the money she derived from the store into Mr. Andrade's account. For a while, Mr. Andrade was employed at the store and received a salary. Ms. Hill managed the store on a full-time basis from its inception in 2012 until she later obtained outside employment and hired a manager. From that time on, she continued to work at the store in the evenings. In 2012, Ms. Hill took "weekly draws" from the store totaling $35,900. From 2013 to 2016, Ms. Hill's "weekly draws" totaled $52,000 each year. For the three-month period ending in March 2017, her "weekly draws" totaled $13,000. Ms. Hill did not receive a salary or wages in addition to these weekly draws and believed that the draws constituted compensation for the time she spent working at the store.

After the parties' personal relationship ended and Mr. Andrade stopped working at the store, the parties made oral agreements about the terms on which he would be paid, and

Ms. Hill tried to abide by those agreements. Various payments were made to Mr. Andrade, Andrade, LLC, and Mr. Pianalto on an irregular basis from May 2012 through June 2016 from the store's revenue. The parties agreed that Mr. Andrade could allocate these payments among the Andrade Loan, the LLC Loan, and the Pianalto Loan.

In mid-2016, Mr. Andrade, Andrade, LLC, and Mr. Pianalto sued Ms. Hill in Virginia for breach of partnership agreement and breach of contract. Ms. Hill counterclaimed, asserting that Mr. Andrade should be held liable for half of the loans extended to the store.

In October 2016, Ms. Hill withdrew $15,000 from the store as an "additional draw." She withdrew these funds to pay her personal income taxes after using the funds she had previously set aside for that purpose to cover a family medical emergency. She did not obtain Mr. Andrade's permission to make this withdrawal and did not believe she needed that permission: she thought the partnership had terminated and that she was operating as a sole proprietor.

In June 2017, the parties executed a settlement memorandum in which they agreed to work in good faith to transfer the store to Mr. Andrade. They also agreed that, upon the transfer of the store, Ms. Hill would be released from any liability for the loans made by Mr. Pianalto, Mr. Andrade, and Andrade, LLC, or for any other matter raised in the complaint. They further agreed that Ms. Hill would not withdraw any funds from the store in excess of $1,000 per week in draws until a transfer of the store or the entry of a court order. Ms. Hill tried to transfer the store to Mr. Andrade but ran into several hurdles. She had to leave the state to provide care for her family and learned that she would be unable

to keep the store in operation from out of state. She also learned that she would be unable to transfer the franchise to Mr. Andrade and would remain liable for any management decisions he might make.

After conducting a trial in November, 2017, the Virginia court issued an Order, concluding that Mr. Andrade was liable for half of the balance of the Andrade Loan, the LLC Loan, and the Pianalto Loan. The court also terminated the general partnership between Mr. Andrade and Ms. Hill and granted (a) judgment against Ms. Hill in favor of Mr. Andrade in the amount of $149,299.50 for half of the partnership profits; (b) judgment against Ms. Hill in favor of Mr. Andrade for $1,293.13 on account of the Andrade Loan; (c) judgment against Ms. Hill in favor of Andrade, LLC for $19,000 on account of the LLC Loan; and (d) judgment against Ms. Hill in favor of Mr. Pianalto for $19,500 on account of the Pianalto Loan. The Virginia court's calculation of partnership profits was based, in part, on the "weekly draws" Ms. Hill had taken from the store.

After the trial in November 2017, Ms. Hill took an "additional draw" of $9,000 from the business to pay her legal bills and relocation expenses for her family members. She did not obtain Mr. Andrade's permission to make this withdrawal and did not believe she needed that permission because the partnership had been terminated. In December 2017, Ms. Hill terminated the franchise and stopped operating the store. Sometime later, she received a final settlement statement from 7-11 reflecting a deficit of $222.76. At no time did Ms. Hill decline to take funds due to her from 7-11 in order to avoid paying her creditors. She did not terminate the franchise or stop operating the store to avoid repaying

5

her creditors. Instead, she made these decisions so that she could move to Maine to care for her family members.

## DISCUSSION

Federal district courts have jurisdiction over appeals from final judgments, orders, and decrees of the bankruptcy courts. 28 U.S.C. § 158(a)(1). "On intermediate appeal to a district court, a final order of the bankruptcy court is subject to the same familiar standards of review normally employed in direct appeals to the courts of appeals in civil cases generally." *In re LaRoche*, 969 F.2d 1299, 1301 (1st Cir. 1992). I review the bankruptcy court's conclusions of law de novo and any factual findings under the more deferential clearly erroneous standard. *See Wheeling & Lake Erie Ry. Co. v. Keach*, 606 B.R. 1, 5 (D. Me. 2019); *Davis v. Cox*, 356 F.3d 76, 82 (1st Cir. 2004).

Below, Mr. Andrade asked the Bankruptcy Court to find that Ms. Hill's debts to him are nondischargeable under 11 U.S.C. § 523(a)(4), which excepts "any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" from discharge. Count I of the Amended Complaint challenged the dischargeability of Ms. Hill's debt to Mr. Andrade for profits from the pair's defunct partnership. In Count II, not at issue in this appeal, Mr. Andrade asserted that all of Ms. Hill's debts to him should be excepted from discharge because she engaged in embezzlement when she took the "additional draw" of $15,000 in October 2016 and the "additional draw" of $9,000 in November 2017.

Mr. Andrade raises two grounds for appeal, both related to his claim in Count I for $149,299.50 in partnership profits. Count I alleged that the partnership profits should be

excepted from discharge in Ms. Hill's chapter 7 case as a "debt . . . for fraud or defalcation while acting in a fiduciary capacity[.]" 11 U.S.C. § 523(a)(4). Mr. Andrade argues the Bankruptcy Court erred first by finding there was no fiduciary relationship between the parties, and second, by finding that fraud was not an issue in the case. Brief for Appellant. at 7-8. Because both arguments are moot and meritless, as discussed in more detail below, I dismiss Mr. Andrade's appeal and affirm the decision of the Bankruptcy Court in full.

### A. FIDUCIARY RELATIONSHIP

First, Mr. Andrade argues the Bankruptcy Court erred when it found "[Ms. Hill] did not have a fiduciary responsibility to [him]" for purposes of defalcation dischargeability under 11 U.S.C. § 523(a)(4). Brief for Appellant at 7. But in its decision the Bankruptcy Court explicitly assumed a fiduciary relationship existed between the parties:

> Fiduciary capacity under section 523(a)(4) exists only in circumstances constituting a technical or express trust… the Court assumes that [Virginia Revised Uniform Partnership Act, Va. Code Ann. § 50- 73.102(A)] gives rise to a technical trust within the meaning of section 523(a)(4).

*In re Hill*, 610 B.R. 154, 162 (Bankr. D. Me. 2019). The Bankruptcy Court denied Mr. Andrade relief, instead, because it found Ms. Hill did not breach her fiduciary duty to Mr. Andrade with the requisite *mens rea. Id.* For a debt to be nondischargeable under § 523(a)(4), the debtor must violate the fiduciary duty "with 'knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.'" *Id.* at 161 (citing *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013)). The Bankruptcy Court found Ms. Hill was at worst negligent in her failure to remit partnership profits to Mr. Andrade, and denied relief under Count I because her behavior did not rise to the level of gross recklessness. *Id.* at 162-63. Mr. Andrade does not point to any evidence that

7

would suggest gross recklessness, and I do not find any in the record. Therefore, because the Bankruptcy Court assumed a fiduciary relationship existed for purposes of its opinion, and correctly decided that Ms. Hill did not violate any fiduciary duty with gross recklessness, I find Mr. Andrade's first allegation of error to be moot and unsupported by the law.

### B. FRAUD

Second, Mr. Andrade argues that the Bankruptcy Court erred "in determining fraud was not at issue," and "did not determine on [*sic*] way or another the Appellee's intent to defraud" when assessing his claim for nondischargeability of $149,299.50 in partnership profits. Brief for Appellant at 8. I begin by noting that the Bankruptcy Court did, in fact, consider whether Ms. Hill had defrauded Mr. Andrade under § 523(a)(4). *In re Hill,* 610 B.R., at 161 ("[E]ven if that pleading were construed to include a claim sounding in fraud, the facts would not support a determination of nondischargeability based on fraud."). The error Mr. Andrade alleges, therefore, is harmless and would have no effect on the outcome.[1] Since Mr. Andrade's second allegation of error would have no effect on the outcome of his case, I find it is likewise moot, and uphold the Bankruptcy Court's ruling on the allegation of fraud under § 523(a)(4).

### CONCLUSION

---

[1] Had Mr. Andrade objected to the Bankruptcy Court's finding that Ms. Hill did not defraud him under § 523(a)(4) I would likewise find that objection meritless. As the Bankruptcy Judge pointed out, there is no evidence the debt for partnership profits arose because Ms. Hill made false statements about the partnership with the intent to deceive Mr. Andrade and induce his participation in the enterprise; the debt came about because of a poorly-performing store and an equally poorly-performing relationship. *See In re Hill*, 610 B.R., at 161 (relying on *Honkanen v. Hopper (In re Honkanen),* 446 B.R. 373, 382-83 (B.A.P. 9th Cir. 2011). Finding no evidence in the record that would support a finding of fraud, I agree with the Bankruptcy Judge that "[t]his is a defalcation case, not a fraud case." *Id*.

8

Because I find Appellant's arguments of legal error are both meritless and moot, and none of the Bankruptcy Court's findings of fact was clearly erroneous, I therefore dismiss the bankruptcy appeal and affirm the judgment of the Bankruptcy Court in full.

**SO ORDERED.**

Dated this 2nd day of April, 2020.

                                         /s/ Lance E. Walker
                                         UNITED STATES DISTRICT JUDGE